JOURNAL ENTRY AND OPINION
Defendant-appellant John Leone appeals from the trial court's denial of his motion to withdraw his guilty plea to numerous drug offenses prior to sentencing pursuant to Crim.R. 32.1. We find no abuse of discretion in the trial court's action and affirm the order below.
Between July 1995 and July 1998, defendant John Leone (age 63) was indicted in four separate indictments totaling twenty-seven counts. The numerous counts in these indictments included corrupting another with drugs (R.C. 2925.02), drug trafficking (R.C. 2925.03), drug abuse (R.C. 2925.11), rape (R.C. 2907.02), kidnapping (R.C. 2905.01) and attempted murder (R.C. 2903.13). On May 31, 1998, defendant was extradited from Mexico where he had fled to avoid prosecution. Defendant retained the services of Gerald Gold and John Pyle as defense counsel. Trial was scheduled for November 16, 1998.
Prior to trial, several unsuccessful discussions regarding a plea agreement occurred between the prosecution and the defense. On November 16, 1998, trial commenced and a jury was selected. The following morning, the parties reached a plea agreement before opening statements. Subsequently, the trial court thoroughly discussed each count with the defendant including the possible penalties for each count. The court then, pursuant to Crim.R. 11(C), carefully explained the constitutional rights defendant was waiving by pleading guilty.
In accordance with the agreement, defendant pled guilty to twenty-four of the twenty-seven counts with an agreed sentence of eighteen to twenty-five years. The rape and kidnapping counts were nolled and the attempted murder count was amended to felonious assault (R.C. 2903.13). Sentencing was scheduled for December 15, 1998. Following his plea, defendant obtained new counsel.
On December 9, 1998, prior to sentencing, new defense counsel filed a motion to withdraw his guilty plea pursuant to Crim.R. 32.1. Defendant asserted in his motion that his plea was made under an incredible amount of stress and confusion and, therefore, it was not knowingly and voluntarily made. He further asserted that a communication breakdown occurred in his relationship with Mr. Gold during plea negotiations.
On December 15, 1998, the trial court held a four-hour hearing on defendant's motion to withdraw the plea. The defense called three witnesses in support of its motion and the State called one witness.
Diane Leone, defendant's niece, testified that she had a conversation with Mr. Gold on Friday, November 13, 1998, during which he expressed to her that this was going to be a difficult case because it involved "five or six minors that are going to testify that your uncle gave them drugs and each one of these carries a mandatory 12-year prison sentence." She testified that she became "terribly upset and crushed" when she heard this and contacted the defendant the next day regarding it. Ms. Leone advised defendant: "John, I really think, you know, you are up against it. I think that this is — I think you ought to plea bargain. I know you are afraid." She testified that the "media had been very cruel" and had written "all kinds of lies in the paper" and that defendant "absolutely" was concerned about the embarrassment to the family that a trial would create.
Joan Vivolo, defendant's sister, testified that she had a conversation with Mr. Gold on the first day of trial during which he also informed her of the five or six minors involved and the accompanying twelve-year mandatory sentences. She asked him "Jerry, you really don't have your heart in this case do you." Mr. Gold responded "I work very hard for all of my clients and do the best I can and I apologize and I didn't mean to offend you." The following day, Ms. Vivolo communicated to the defendant the content of her conversation with Mr. Gold where defendant stated that "[s]omething is wrong here. I'm not getting things from my attorney that he is telling you." She testified that on Monday, November 16, 1998, defendant expressed to her that he wanted to plea bargain in order to protect the family from the surrounding "media sensation."
Ms. Vivolo further testified that Mr. Gold told her that the prosecution had offered eighteen years as their last offer. She testified that defendant expressed to her that he was not informed of his right to "a jury trial or a trial by a Judge only."
Defendant testified that he did not believe that he made the decision to plead guilty intelligently because he "was under a lot of stress, mental anxiety" and that he had a "serious communication problem" with his trial counsel. Defendant testified that he "felt that he was kept in the dark about a lot of things" and that he "was not prepared for what was going to happen." He testified that he only had five to ten minutes to discuss the plea agreement with his counsel before the change of plea. Even though defendant asserted that he was never informed by Mr. Gold of his right to a bench trial, he acknowledged to his sister that the trial judge had asked him twice if he was aware of this right. He was also aware that defense counsel had filed an unsuccessful motion in limine to keep out various references to degrading sexual acts and that he was concerned about such references. Defendant admitted that if the State's proposed witnesses were permitted to testify to these acts, it would be "very embarrassing and very humiliating" to him and his family. Defendant testified that he thought he was agreeing to nine years even though he acknowledged that the trial judge told him during the plea hearing that it was a "mandatory 18 years."
Defendant admitted that he had a conversation with Ms. Vivolo that he would plead guilty to the charges that he felt he was guilty of, but would not plead to the charges he was not guilty off. He also told her "that with all of this stress and the humiliating remarks that were going on in the courtroom and in the witness area that I didn't want to put my family through unnecessary — more mental anxiety or strain." Defendant further admitted that on three separate occasions in 1992-1994, he had previously pled guilty to drug charges before another judge and during each of those pleas, he was informed off his right to a jury or bench trial. Defendant also pled guilty in four previous cases in Broward County, Florida between 1986 and 1988. Defendant admitted that during the current plea hearing, he responded to all of the Crim.R. 11(C) questions from the trial court. In fact, he testified that he expressed to the court that he was happy with the representation of Mr. Gold and Mr. Pyle. However, defendant asserts that he was "not thinking intelligently" and "was just confused" at the time.
Mr. Gold testified that he was retained by defendant and had met with defendant on at least fourteen occasions over the course of pretrial negotiations and discovery hearings. Contrary to defendant's claim, Mr. Gold stated that defendant received all of the discovery reports and had received all of the investigator's reports on the witnesses "probably the week before trial." Defendant also had all of the statements from the state's proposed witnesses. Mr. Gold testified that they discussed what the witnesses would be testifying to, including degrading and vile acts. The motion in limine was filed to keep such evidence out of the trial.
Mr. Gold testified that he repeatedly told the defendant that the best they could get was eighteen years and that was all the State was offering. He stated that on Monday, November 16, 1998, defendant called him at home and expressed that he wanted to enter a plea of guilty and that he did not want to embarrass the family anymore. The following morning, Mr. Gold discussed the indictments with defendant. Mr. Gold explained that maybe he could get the attempted murder count reduced to felonious assault and the rape and kidnapping charges dismissed. Even though he was successful, the State would not offer less than eighteen years and Mr. Gold informed defendant of this. He also explained to defendant that the eighteen-year term was mandatory, that there was no shock or supershock probation, and that he "had gone over ad nauseam all his rights about the jury." Mr. Gold testified that defendant was aware he was entitled to a jury or bench trial. He further stated that he was certainly concerned about the collateral matters in defendant's case which normal citizens would consider "incredibly disgusting." Mr. Gold testified that there was no way to defeat the State's charges and that defendant's plea off guilty seemed like the only way. Mr. Gold then admitted to the court that he had discussed with defendant his professional recommendation not to waive a jury based on the presiding judge and the pending sex charges. There was no question in Mr. Gold's mind that defendant understood that he was going to get eighteen years.
On December 28, 1998, the trial court denied defendant's motion to withdraw his guilty plea. The trial court found that defendant was represented by highly competent counsel, that he was afforded a full Crim.R. 11 hearing prior to entering his plea, that he was given a complete and impartial hearing on his motion to withdraw and that the court gave full and fair consideration to his plea withdrawal request. On February 9, 1999, defendant was sentenced to the agreed upon eighteen to twenty-five years and mandatory fines of $102,500 were imposed.
This timely appeal followed.
Defendant's sole assignment off error states:
 I. IT WAS PREJUDICIAL ERROR AND AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO DENY THE APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA BEFORE SENTENCING.
In his assignment of error, defendant asserts that the trial court erred in not granting his motion to withdraw his guilty plea because defense counsel failed to explain his constitutional right to waive a jury and try his case to the court. He further asserts that defense counsel told him that he would only receive nine years in prison.
Crim.R. 32.1 provides, in pertinent part, as follows:
 A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.
The general rule is that "a presentence motion to withdraw a guilty plea should be freely and liberally granted." State v. Xie
(1992), 62 Ohio St.3d 521, 527. However, it is well established that "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." Id. at paragraph one of the syllabus. "The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court. Id. at paragraph two of the syllabus. Absent an abuse of discretion, the trial court decision must be affirmed. Id. at 527. An abuse of discretion is more than an error of law or judgment, "we must find that the trial court's ruling was `unreasonable, arbitrary or unconscionable.'" Id. at 527, quoting State v. Adams
(1980), 62 Ohio St.2d 151, 157.
This Court in State v. Petersiem (1980), 68 Ohio App.2d 211, paragraph three of the syllabus, held that:
 A trial court does not abuse its discretion in overruling a motion to withdraw the plea: (1) where the accused is represented by highly competent counsel, (2) where the accused was offered a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request.
In the instant case, the record reflects that defendant was represented by Mr. Gold and Mr. Pyle, two highly competent and successful criminal defense attorneys. The testimony established that defendant's defense team vigorously defended their client, including filing several pretrial motions. Even though defendant asserts that Mr. Gold pressured him and failed to inform him that he could try the case to the court rather than a jury, the testimony of Mr. Gold showed that this issue was discussed with defendant and that it was decided that it would be better to try the case to a jury in this sex case rather than to this judge. The trial court also fully explained defendant's right to waive a jury at his plea hearing prior to his plea. It is well established that the weight given to the testimony and the credibility of the witnesses is within the province of the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
We find, as did the trial court, that defendant was given a full Crim.R. 11 hearing prior to entering his plea. The record reflects that the trial court thoroughly explained each of the twenty-four counts and their potential penalties prior to defendant's plea. The court also fully explained each one off defendant's constitutional rights in accordance with Crim.R. 11(C), including his right to a bench trial. It is also clear from the record that defendant was repeatedly advised prior to his plea that he was facing eighteen years actual incarceration. Mr. Gold testified that he told defendant that the State would not offer anything less than eighteen years. Furthermore, defendant acknowledged that he had the prosecutor's chart in front of him at the time off his plea which clearly showed that count one carried a twelve-year actual term of incarceration and count two carried six years actual incarceration. Accordingly, there was no confusion in the record that defendant was to receive eighteen years actual incarceration.
The record also establishes that a full and impartial hearing was afforded to defendant and that the trial court fairly considered defendant's plea withdrawal request. The trial court conducted a four and a half hour hearing on defendant's motion to withdraw. This hearing included the testimony of several witnesses called by the defendant and the State.
Diane Leone, defendant's niece, and Joan Vivolo, defendant's sister, testified to defendant's stress and anxiety prior to his guilty plea. They also testified regarding the alleged lack of communication between defendant and Mr. Gold. Defendant similarly testified that there was a communication problem with defense counsel and that Mr. Gold failed to inform him of several facts and rights prior to his plea. Defendant further testified that Mr. Gold told him that he would receive only nine years incarceration.
Mr. Gold, on the other hand, testified that the State never offered less than eighteen years and that defendant knew this. He testified that defendant was very concerned about the embarrassing and humiliating facts which could be revealed during a trial and defendant made the decision to plead guilty rather than put his family through such a trial.
The transcript reflects that the trial court thoroughly and fairly considered all off the testimony presented at the hearing. As discussed above, the credibility of witnesses is a matter primarily within the prerogative of the trial court which has the opportunity to hear and see the witnesses. The evidence established that defendant was repeatedly informed and aware of the consequences of his guilty plea. There was also evidence that the instant case was only the latest in defendant's long history of plea negotiations and guilty pleas. Defendant had previously pled guilty on three separate occasions to various drug charges.
Based on this evidence, we find that the trial court's denial of defendant's motion to withdraw his guilty plea was not unreasonable, arbitrary or unconscionable. Accordingly, the trial court did not abuse its discretion in denying the motion.
Defendant's sole assignment of error is overruled.
Judgment denying the motion to withdraw the guilty plea is affirmed.
It is ordered that appellee recover off appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution off sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KARPINSKI. P.J., and BLACKMON, J., CONCUR.
 _________________________ JAMES M. PORTER, JUDGE